UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RONNY COYLE and LISA COYLE                                              PLAINTIFFS

v.                          No. 2:17-CV-02099

SHELTER MUTUAL INSURANCE COMPANY                                         DEFENDANT

**OPINION AND ORDER**

Before the Court are Defendant Shelter Mutual Insurance Company's ("Shelter") motion for new trial (Doc.43), memorandum brief in support of motion (Doc. 44), Plaintiffs Ronny Coyle and Lisa Coyle's ("the Coyles") response to motion for new trial (Doc. 47), and memorandum brief in support of response (Doc. 48). Following the unanimous jury verdict (Doc. 35) returned for Plaintiffs and the Court's opinions and orders (Docs. 21, 45), the Court entered final judgment on October 16, 2018 (Doc. 46). This motion (Doc. 43) was filed before entry of the final judgment and was timely filed. *See* Fed. R. Civ. P. 59(b). For the reasons stated below, Shelter's motion (Doc. 43) will be GRANTED.

**I.    Standard of Review**

"The court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . ." Fed. R. Civ. P. 59(a)(1)(A). "Under Rule 59, the decision to grant a new trial lies within the sound discretion of the trial court." *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 471 (8th Cir. 2011). "[T]he key question [is] whether a new trial is necessary to prevent a miscarriage of justice." *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 421 (8th Cir. 2017) (quoting *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 462 (8th Cir. 2013)).

1

## II. Analysis

Shelter's motion for new trial is based on closing arguments made by the Coyles' attorney. The Coyles filed a breach of contract action based on a fire loss on property insured by Shelter. Before trial, Shelter filed a motion in limine (Doc. 26) to preclude evidence of non-prosecution of Ronny Coyle and Lisa Coyle as a result of the fire. The Coyles planned to introduce the testimony of a state police investigator who investigated the fire and concluded that no criminal charges should be filed. The prosecuting attorney followed the recommendation of the state police investigator, and no criminal charges were filed as a result of the fire. While the Court denied the motion as premature, it permitted Shelter to renew the motion and raise the objection at trial. (Doc. 28).

At the commencement of trial, Shelter renewed its motion in limine to preclude the testimony of Sam Bass, the state police investigator, as it related to his report and recommendation that the Coyles not be charged with any criminal offenses as a result of the fire. The state police had been contacted by Shelter, which reported to the state police that the origin of the fire was suspicious. The state police investigator prepared a written report based on his investigation of the fire scene and interviews with witnesses. The Coyles intended to introduce the written report into evidence. The Court ruled that the written report was not admissible, but that the state police investigator could testify about his observations from his investigation of the fire. The Court granted Shelter's motion in limine to the extent the state police investigator intended to testify that Ronny Coyle or Lisa Coyle were not charged with arson, or to the extent he intended to testify that there was no evidence that Ronny Coyle or Lisa Coyle set the fire. (Doc. 42, p. 7). At trial Sam Bass testified about his observations from investigating the fire, but did not testify as to his recommendation to the prosecuting attorney that no criminal charges be filed against the Coyles.

During Ronny Coyle's testimony on direct examination, he was asked a question by his attorney that came close to the issue of non-prosecution of the Coyles as a result of the fire loss:

Q. Now, do you have any type of criminal history of arson--

A. No.

Q. -- or any other --

A. No.

Q. -- things in your background?

A. Never been in trouble. I haven't even got, had a ticket in years.[1]

No objection was made to the question or the response. There were no other references to criminal charges not being filed against the Coyles as a result of the fire from any of the other witnesses at trial.

During closing argument, the Coyles' attorney made references to Shelter's affirmative defense that the Coyles' violated the terms of their insurance policy, and to the proof at trial on the affirmative defense. The Coyles' attorney stated:

> The other one here is "an action by or the direction of an insured committed with the intent to cause a loss." What they are basically saying there is they think either Ronny or Lisa Coyle set the fire, but you've not heard anybody on the stand say that. Their expert can't say that. They can imply it. They can infer it, but nobody's actually proven that. And that is their burden to prove, that Ronny Coyle set this fire. *You've heard Ronny and Lisa both say that they have never been in any kind of trouble.* They wouldn't do this.

(Doc. 42, p. 18) (emphasis added). No objection was made to the argument.

During closing argument, the Coyles' attorney also argued to the jury that they could judge

---

[1] Most quotations are from portions of the transcript appearing on the record. Quoted trial material that does not appear in filed transcript excerpts comes from a realtime audio transcript used by the court reporter to prepare official transcripts, and from the Court's recollection and notes.

the credibility of Ronny and Lisa Coyle, and she made further reference to the testimony of Sam Bass as it related to the Coyles' credibility. The Coyles' attorney stated:

> And they were trying to find out themselves who set the fire or what happened. I mean, if there was a fire set, it wasn't them that set it, and I don't think that's been proven here today. They may have proved with the fire investigator, the paid one, that a fire was set, but you also heard Sam Bass, who's not a paid investigator, that wasn't even called out initially. I mean, if they thought this was truly an arson situation, there was local law enforcement there on the scene. They clearly didn't -- they didn't open a case. *There weren't ever any charges filed*. Then Sam Bass was finally called in, notified a month later and went out there two months later after he got the case and really wasn't much that they could see. . . . [Y]ou heard him testify, that his file was closed *and that he thought Ronny Coyle was telling the truth*. And that's coming from somebody that does that for a living.

(Doc. 42, pp. 20–21) (emphases added). This time, Shelter's counsel objected, arguing that Sam Bass was not allowed to testify whether or not Ronny Coyle was telling the truth. The Court sustained the objection, reminding counsel that the scope of Sam Bass's testimony was limited and directed counsel to follow the instructions. The Coyles' attorney continued the closing argument, stating:

> Anyway, there was no action taken after that. You heard Ronny Coyle testify to that, that he was never called into the Sheriff's Office, *never charged*.

(Doc. 42, pp. 21–22) (emphasis added). The Court interjected at this point, and stated in the presence of the jury:

> I'm going to -- again, I'm not going to permit you to make those arguments. Again, I've instructed the jury that closing arguments of counsel are not evidence, but you're somewhat misconstruing the evidence in making that statement.

(Doc. 42, p. 20). The Coyles' attorney responded in the presence of the jury:

> Okay. Your honor. Ronny Coyle did testify, though, that nothing -- he was never charged with anything.

(Doc. 42, p. 20). The Court then convened a bench conference out of the presence of the jury to discuss the matter. Shelter's counsel stated that Ronny Coyle did not testify that he was never

4

charged, and the Court responded:

> He did not, and I specifically told you to stay away from that. . . . I remember I asked specifically if Sam Bass was presented for the sole purpose of showing that he was never charged with arson, and any inference or circumstantial evidence you're intending to argue to prove that fact, I'm going to stop you from doing it, so you need to stay away from it.

(Doc. 42, pp. 22–23). The Coyles' attorney replied:

> I did ask Ronny Coyle, though, had he ever been charged with anything. . . . I knew I couldn't ask Sam Bass that, but I thought -- I asked -- oh, I know what I asked him, I asked if he had ever been charged with anything, and he said, no, not even a parking ticket.

(Doc. 42, p. 23). The Court responded:

> [T]hat still crosses the line . . . because whether he's charged with bank robbery or arson, it doesn't matter. I told you to stay away from that because it is prejudicial to the Defendant . . . if you mislead the jury again about the evidence, I'm going to stop you and I'm going to instruct the jury to ignore what you said.

(Doc. 42, pp. 23–24).

Though it did not move for mistrial following return of the verdict, Shelter now contends that these arguments made by the Coyles' attorney during closing argument were so prejudicial that they prevented Shelter from receiving a fair trial. Shelter also contends that the admonitions by the Court were not sufficient to cure a violation of the Court's pretrial ruling that evidence of non-prosecution of the Coyles was not admissible.

The Coyles contend that the closing arguments were not prejudicial and did not violate the Court's pretrial ruling on evidence of non-prosecution. The Coyles' attorney believed that the pretrial ruling did not prevent the Coyles from testifying that they had no criminal history, but only limited the testimony of the state police investigator, Sam Bass. To the extent the arguments may have violated the Court's evidentiary ruling, the Coyles argue that the Court's admonitions to counsel were sufficient to cure any error in violating the Court's evidentiary ruling. The Coyles

also contend that there was sufficient evidence to support the jury's verdict, and that the case turned on the credibility of the witnesses, which was within the province of the jury.

Before considering the factors the Court is to review on a motion for new trial, the Court will first review the law related to admissibility of evidence of non-prosecution in a fire loss case. This evidentiary issue has arisen in several contexts. In *Galbraith v. Hartford Fire Ins. Co.*, 464 F.2d 225 (3d Cir. 1972), the court of appeals reversed the district court after it permitted the plaintiff's attorney to ask the plaintiff if he had ever been charged with a crime arising out of the fire and permitted the attorney to argue the fact of non-prosecution in closing argument. In reversing the district court, the court of appeals stated that the jury could have concluded that Hartford's defense was specious since no charges had been filed. In *Figa v. R.V.M.P. Corp.*, 874 F.2d 1528 (11th Cir. 1989), the court of appeals reversed the district court after it permitted the plaintiff's attorney to ask the defendant's expert witness on cross examination if the case had been referred to the state's attorney for prosecution. The district court had distinguished between the right of the insured to introduce evidence of non-prosecution on rebuttal from the right of the insured to introduce such evidence on direct. In reversing the district court, the court of appeals said the difference in standards of proof alone was sufficient to exclude the evidence because it might mislead the jury. Both of these courts of appeals concluded it was reversible error to admit evidence of non-prosecution because of the possibility the jury would be confused or misled.

Judge G. Thomas Eisele granted a motion in limine to exclude evidence of non-prosecution in *Warren v. State Farm Fire and Cas. Co.*, No. 3:05-CV-260, 2007 WL 158741 (E.D. Ark. Jan. 17, 2007). Judge Eisele noted that "many courts have adopted 'the rule that a federal trial court commits reversible error when it permits the plaintiff in a suit for fire insurance proceeds to present evidence of his non-prosecution . . . on related criminal arson charges.'" *Warren*, 2007 WL 158741

at *2 (quoting *Rabon v. Great SW Fire Ins. Co.*, 818 F.2d 306, 309 (4th Cir. 1987)). Judge Eisele also cited *Ashby v. Rendezvous Farms*, 381 So.2d 755 (Fla. Dist. Ct. App. 1980) for the proposition that "the comment in closing argument, over objection, that no arrest had been made or anyone convicted as a result of the fire was prejudicial and warrants a new trial on the issue of liability." *Id.* at *2. Judge Eisele granted a similar motion in limine in *Brawner v. Allstate Indem. Co.*, No. 4:07-CV-00482, 2008 WL 110921 (E.D. Ark. Jan. 9, 2008), finding that evidence that plaintiffs have not been arrested, indicted or convicted of insurance fraud or arson is inadmissible. The courts appear to have adopted a firm rule that evidence of non-prosecution in a fire loss case, whether introduced on direct, rebuttal or closing argument, is prejudicial to the insurance company and its introduction constitutes reversible error even when the court takes curative action.

The Court now turns to the factors the Court is to consider on a motion for new trial based on statements made in closing argument. As the Eighth Circuit Court of Appeals has explained:

> When a new trial motion is based on improper closing arguments, a new trial should be granted only if the statements are plainly unwarranted and clearly injurious and cause prejudice to the opposing party and unfairly influence a jury's verdict. It will be a rare case when this court finds that a party has made a sufficient showing of prejudice caused by plainly unwarranted and clearly injurious closing argument.

*Smiley v. Gary Crossley Ford, Inc.*, 859 F.3d 545, 556 (8th Cir. 2017) (quotations and internal punctuation omitted); *see also K.G. ex rel. Gosch v. Sergeant Bluff-Luton Cmty. Sch. Dist.*, 323 F.R.D. 611, 615 (N.D. Iowa 2017). Specific factors the Court should consider include the following: (1) whether the remarks in question were minor aberrations made in passing; (2) whether the district court took specific curative action; (3) whether the size of the damage award suggests that counsel's remark had a prejudicial effect; and (4) whether the weight of the evidence suggests that the improper remark deprived a party of a fair trial. *Ventura v. Kyle*, 825 F.3d 876, 885 (8th Cir. 2016).

The first factor is whether the remarks were minor aberrations. The Coyles' attorney made three references to the fact that the Coyles were "not charged," which appeared to be based on her misunderstanding of the Court's pretrial ruling on evidence of non-prosecution of the Coyles. The pretrial conference where the parties discussed Shelter's renewed motion in limine centered on the testimony of Sam Bass and his written report. The Court was clear on its ruling as presented in the pretrial conference that Sam Bass could not testify to the non-prosecution of the Coyles. When Ronny Coyle was asked if he had any criminal history of arson or other offenses, there was no objection to the question or the answer, although the Court thought it came close to violating the Court's pretrial ruling. As the matter escalated in later closing arguments, Shelter's counsel objected on the basis that Sam Bass could not testify as to the truthfulness of the Coyles. When the matter came up the third time, the Court intervened and admonished the Coyles' attorney not to go into the area of criminal charges. While the Court concludes that the remarks were not "minor aberrations," they appear to have been made based on a counsel's misunderstanding of the Court's ruling on evidence of non-prosecution. That misunderstanding was not reasonable, and at any rate, any reference to criminal charges has a tendency to mislead or confuse the jury as to the standard of proof in a civil case. This factor weighs in favor of the Defendant.

The second factor is whether the district court took specific curative action. When the matter first arose, the Court instructed the Coyles' attorney in the presence of the jury that she was not permitted to make those arguments, that the Court had instructed the jury that closing arguments of counsel are not evidence, and that the Coyles' attorney was misconstruing the evidence. The other times the matter arose the Court took action in a side bar conference to admonish the Coyles' attorney not to go into the area of criminal charges because they were prejudicial to the defendant. The Court took specific curative action to limit the evidence of non-

prosecution. The third factor is whether the size of the damage award suggests that counsel's remark had prejudicial effect. The jury awarded damages based on the value of the property destroyed in the fire. The size of the damage award would not have been affected by the remarks. The second and third factors weigh in favor of the Plaintiffs.

The fourth factor is whether the weight of the evidence suggests that the remarks deprived the defendant of a fair trial. There were only four witnesses at trial—Ronny Coyle, Lisa Coyle, Sam Bass, and Jody Cooper, expert witness for Shelter. The case primarily turned on Shelter's affirmative defense that the fire was caused by an action, by or at the direction of the Coyles, or by the neglect of the Coyles to use all reasonable means to protect the covered property. Shelter's expert witness testified that the cause of the fire was by incendiary means that would have required an individual to set the fire. The Coyles' attorney cross-examined Shelter's expert witness and challenged his credibility. Ronny Coyle and Lisa Coyle denied having set the fire, and Shelter's counsel vigorously cross-examined Ronny Coyle, challenging his denial of having set the fire. The jury had to weigh the evidence and the credibility of the witnesses. There was sufficient circumstantial evidence that the jury could have returned a verdict for either party based on their evaluation of the weight of the evidence and their credibility determinations of the witnesses. However, the jury could possibly have been confused about the standard of proof by counsel's argument that Ronny Coyle "was never called into the Sheriff's office, were never charged." (Doc. 42, p. 22). The non-prosecution of the Coyles and that fact that there were no criminal charges filed against anyone could likely influence the jury's consideration of the evidence. Although the weight of the evidence could have gone either way, and the jury could have easily reached the same verdict in the absence of the inadmissible evidence and statements, this factor weighs more in favor of the Defendant because evidence of non-prosecution of the Coyles was

prejudicial to the Defendant.

On a motion for new trial, the Court can consider the credibility of the witnesses in making its decision whether to grant a motion for new trial. *Howard v. Nucor-Yamato Steel Co.*, No. 3:14CV00202, 2016 WL 697131 *4 (E.D. Ark. Feb. 22, 2016). This type of motion is usually made based on the sufficiency of the evidence. Even though the Court may evaluate the credibility of the witnesses on a motion for new trial, the Court is not free to totally disregard the jury's verdict and substitute its own judgment. "Where the subject matter of the litigation is simple; where there exists no complicated evidence or *where the legal principles presented are such that they would not confuse the jury*, the court should be reluctant to grant a new trial." *White v. Pence*, 961 F.2d 776, 781 (8th Cir. 1992) (emphasis added) (quoting *Fireman's Fund Co. v Aalco Wrecking Co., Inc.,* 466 F.2d 179, 187 (8th Cir. 1972)). "[W]here reasonable men can differ in evaluating credible evidence, a new trial on the ground of the weight of the evidence should not be granted." *Id.* Because reasonable jurors could have returned a verdict for the Coyles in the absence of evidence of non-prosecution, the question here is whether despite that evidence this is a case "where the legal principles presented are such that they would not confuse the jury." *Id.*

As mentioned above, this is a case that turned on Shelter's affirmative defense. The jury heard conflicting evidence and they had to make credibility determinations in reaching their verdict. The jury could have decided the facts either way based on the evidence presented. While the court can evaluate credibility on a motion for new trial, this case was not one where the testimony of the witnesses was totally unbelievable, and the Court is not granting a new trial on that basis. Here, the introduction of evidence of non-prosecution was very likely to confuse the jury because the courts seem to have developed a "bright-line rule" that evidence of non-prosecution in a fire loss case is so prejudicial to the insurance company that it is reversible error

10

not to grant a motion new trial. While the Court is reluctant to grant Shelter's motion for new trial, it will follow the firm rule set forth in *Galbraith v. Hartford Fire Ins. Co.* and *Figa v. R.V.M.P. Corp.* Since Shelter's motion for new trial is based upon improper closing arguments, the Court considers this bright-line rule along with the four factors in *Ventura v. Kyle.* Though the factors were otherwise evenly balanced between the parties, the bright-line rule tilts the decision in favor of the Shelter on the motion for new trial.

**III.     Conclusion**

IT IS THEREFORE ORDERED that Defendant Shelter Mutual Insurance Company's motion for new trial (Doc. 43) is GRANTED. The Judgment (Doc. 46) is VACATED. This matter will be reset for trial by separate order.

IT IS SO ORDERED this 14th day of November, 2018.

*/s/ P. K. Holmes, III*
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE